UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



FILED
FEB - 9 2010
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:                                      CASE NO. 6:08-bk-04327-KSJ

MIRABILIS VENTURES, INC.,                   CHAPTER 11

    Debtor.

_____/

MIRABILIS VENTURES, INC.,

    Plaintiff,                              ADV. PRO. NO.: 6:10-ap-00030

PAUL GLOVER, individually,

    Defendant,

_____/

### ANSWER AND MOTION IN RESPONSE TO MIRABILIS VENTURES, INC.'S ADVERSARY COMPLAINT AGAINST PAUL GLOVER

Comes now Mr. Paul Glover pro se ("Glover"), in continued support of his Claim No. 5 and Claim No. 6 filed by Glover (the "Glover Proofs of Claim"), and in answer to Mirabilis Ventures, Inc.'s Adversary Complaint against Glover (hereafter "Adversary Complaint"), and states as follows:

### PROCEDURAL AND FACTUAL HISTORY

1. The Debtor based its original Objection to the Glover Proofs of Claim on three premises: The first, on the basis that "Mr. Glover was not an employee of Mirabilis, and Mirabilis is not liable for any debt accumulated by Common Paymaster Corporation" (hereafter "CPC"). The second, on the basis that "there is no evidence in the Debtor's books and records that Mirabilis received value for the Glover claim". And lastly, in Objection to Claim No. 6, "in the alternative, that Glover's Claim is based on his equitable interest in the Debtor... and not properly classified as an unsecured claim".

2. The Adversary Complaint Items 6-12 references the existence of an Employment Agreement with Mr. Glover, that Mr. Glover was an officer of Mirabilis stating that Mr. Glover was appointed Executive Vice President and Treasurer of Mirabilis responsible for the strategic maintenance of Mirabilis and owed Mirabilis good faith and loyalty as well as other fiduciary duties.

3. The Adversary Complaint Items 18-20 references that on June 18, 2008 Glover filed the Glover Proofs of Claim.

4. The Adversary Complaint recaps the Glover Proofs of Claims referencing that Claim No. 5 was for services performed under his Employment Agreement aggregating $458,379.20 and is comprised of the following: Unpaid Guaranteed Minimum Bonus Compensation $360,000. Unpaid Severance Pay $90,000. Unpaid Salary $7,500 for the last semi-monthly period prior to separation from service on March 6, 2007. And, $879.20 for unpaid life insurance premiums. The transaction supporting Claim No. 5 was negotiated at arm's length between Mirabilis' controlling person's and Mr. Glover, unrelated parties at the time of the transaction, and at a time when Mirabilis was not the subject of any known criminal investigation and while Mirabilis was solvent, profitable and highly liquid.

5. The Adversary Complaint recaps the Glover Proofs of Claims referencing that Claim no. 6 was for a $2,750,000.00 unsecured promissory note, plus accrued interest beginning on March 6, 2006 for a total of $2,854,949.39, but fails to represent that the transaction giving rise to the obligation occurred on December 31, 2005. The obligation was attached to the issuance of 2,750 of Green Shares in Mirabilis in connection with the process of recruiting Mr. Glover to leave gainful employment with Pan Am International Flight Academy, Inc. (hereafter "Pan Am"), forfeiting his existing standing with respect to Pan Am's equity and bonus compensation structure, in exchange to take on an enormous challenge of organizing the accounting records of Mirabilis Ventures, Inc.'s consolidated group of over 60 entities in

preparation for an audit of Mirabilis from inception November 2003 through December 31, 2005, as Mirabilis' new CFO, among other considerations negotiated for and exchanged at that time. The representations made at that time, are evidenced by in the Mirabilis Ventures, Inc. Consolidated Audited Financial Statements from Inception through December 31, 2005 (hereafter "MV Audited Financials"), and subsequently by the Articles of Incorporation set forth in Mirabilis Shareholder Proxy Exhibit B Paragraph 2.07 - Redemption (hereafter "Mirabilis Shareholder Proxy"), was that the Green Shares were supported by an unsecured promise to pay $1,000 per Green Share payable in 60 even monthly installments together with accrued interest beginning upon separation of service for any reason (see Footnote 19 to the MV Audited Financials and the Mirabilis Shareholder Proxy attached hereto). The transaction supporting Claim No. 6 was negotiated at arm's length between Mirabilis' controlling person's and Mr. Glover, unrelated parties at the time of the transaction, December 31, 2005, and at a time when Mirabilis was not the subject of any known criminal investigation and while Mirabilis was solvent, profitable and highly liquid.

## AS TO COUNT I – AMENDED OBJECTION TO CLAIM NO. 5

6. In response to Count I of the Amended Objection to Claim No. 5, Mr. Glover re-alleges and restates Items 1-5, as fully set forth above.

7. In response to the Amended Objection to Claim No. 5 referenced in paragraphs 22 through 24, which objects on the basis that Mirabilis is not liable for the Employment Agreement with Mr. Glover because it was executed by Common Paymaster Corporation, Mr. Glover restates: Common Paymaster Corporation ("CPC") was a 100% owned subsidiary of Mirabilis Ventures, Inc. ("Mirabilis"), CPC was very thinly capitalized by Mirabilis and was represented to Mirabilis employees and recruits as the common paymaster for all Mirabilis affiliates. Common Paymaster was not a separately promoted company, and did not even

3

maintain separate formal corporate governance in the form of shareholder meetings minutes and/or Board of Directors meetings and minutes. Common Paymaster lacked a profit motive and functioned to pay payroll of Mirabilis and its affiliates financed almost exclusively by reimbursement for payroll costs directly by Mirabilis. Mirabilis was the face behind of all recruiting and employment communication, and it may be readily implied that Mirabilis fully intended to be the employer by the fact that it was Mirabilis that issued Green Shares to Mr. Glover in connection with his initial recruitment as an officer of Mirabilis, and by the subsequent service to Mirabilis as an officer, which has now been attested to by the Adversary Claimant.

8. In December of 2005 Mr. Glover was recruited by Mr. Bruce Walko, Mirabilis's then Chairman of its Board of Directors, the executive team of Mirabilis including Mr. Dan Myers, Mr. Bob Pollack, Mr. Jim Sadrianna, Mr. Frank Hailstones, Mr. Frank Amodeo and others, to be the new Mirabilis CFO. In connection with the audit of the Mirabilis Consolidated Group for the period from inception through December 31, 2005, a significant purpose for the hiring of Mr. Glover by Mirabilis, CPC was represented to the company's auditors James Moore and Company (Mr. Jay Hutto – Engagement Partner), as a wholly owned subsidiary of Mirabilis and included in the MV Audited Financials. Further, Mirabilis relied on the fact that CPC was processing payroll for Mirabilis as a wholly owned subsidiary to operate as such without the otherwise required state of Florida PEO licensing. All employees of Mirabilis were paid through CPC during the period of Mr. Glover's employment with Mirabilis. After informing the Debtor's counsel that Mr. Glover was also on record with the state of Florida Division of Corporations as the Executive Vice President and Treasurer of Mirabilis Ventures, Inc. the Adversary Claimant now represents that not only was Mr. Glover Mirabilis' Executive Vice President and Treasurer but one with fiduciary duties, in direct conflict with the previous assertion made by the Adversary Claimant that Mr. Glover was not even an employee of

Mirabilis. Under the common law rules as enforced by the U.S. Internal Revenue Service in differentiating between contractors and employees, Officers rendering substantial duties under the direction and control of an employer are deemed employees of that employer. In addition, under the rules of the Internal Revenue Code Mirabilis does in fact maintain liability for unpaid services rendered by an officer under employment agreements processed by a wholly owned subsidiary functioning as a common paymaster.

9. Glover is entitled to $360,000 in unpaid guaranteed minimum bonus compensation referred to in paragraph 25 of the Amended Objection because the referenced "Exception Letter to the Employment Agreement" was clearly issued in connection with the Employment Agreement. In addition, the existence of the referenced Exception Letter has now been clearly acknowledged by the Adversary Claimant.

10. The terms of the Employment Agreement, which was drafted by Mirabilis, entitles Mr. Glover to severance pay equal to six months annual salary (annual salary was $180,000), upon separation from service for any reason other than "for termination of Employee due to breaches of paragraphs 4(a)(1) and 4(a)(7)". In order to breach the referenced paragraph 4(a)(1) of the Employment Agreement, the Employee would have to be "convicted of, or plead guilty or no contest to, a felony under applicable law", and in order for Employee to breach paragraph 4(a)(7) of the Employment Agreement, the Employee would have to have been terminated for "committing a harassment violation of law against an employee, affiliate, owner, client, invitee or licensee of Employer". Mr. Glover's Employment with Mirabilis was not terminated pursuant to paragraphs 4(a)(1) nor 4(a)(7), and as such, Mr. Glover is fully entitled to the $90,000 in unpaid severance compensation, in addition to the unpaid guaranteed bonuses of $360,000, the last semi-monthly paycheck unpaid $7,500, and the value of unpaid life insurance premiums in the amount of $879.20, together which aggregate the $458,379.20 of Claim No. 5.

11. In the alternative, to the extent that the Court determines that Mirabilis used a subsidiary to perpetrate a fraud, then the corporate veil should be pierced and Mirabilis should still be held financially responsible for the Employment Agreement with Mr. Glover.

## REQUESTED RELIEF

**WHEREFORE**, Mr. Glover respectfully requests this Court enter an Order overruling the Amended Objection to Claim No. 5, affirming the validity of Claim No. 5 in its entirety, and for such other and further relief as the Court deems just and proper in the circumstances.

## AS TO COUNT II – AMENDED OBJECTION TO CLAIM NO. 6

12. In response to Count II of the Amended Objection to Claim No. 6, Mr. Glover re-alleges and restates Items 1-5 above, as fully set forth above.

13. Claim No. 6 is based upon the value provided on December 31, 2005 in connection with Mirabilis Ventures, Inc. recruitment of Mr. Glover to accept a position as CFO, Executive Vice President and Treasurer of Mirabilis. At that time Mirabilis was not subject to any criminal investigation, was solvent, profitable and highly liquid. All of the aforementioned facts are supported by the MV Audited Financials issued for the period ending December 31, 2005. The consideration Mr. Glover was to receive was established at that time to be no less than $1,000 per Green Share payable in 60 even monthly installments together with accrued interest beginning upon separation of service for any reason (see Footnote 19 to the MV Audited Financials and the Mirabilis Shareholder Proxy). Mirabilis bargained for and in fact received the consideration it was compensating Mr. Glover for with the Green Shares at that time in the form of Mr. Glover leaving gainful employment with Pan Am International Flight Academy, Inc. (hereafter "Pan Am"), forfeiting his existing standing with respect to Pan Am's equity and bonus compensation structure, in exchange to take on an enormous

6

challenge of organizing the accounting records of Mirabilis Ventures, Inc.'s consolidated group of over 60 entities in preparation for an audit of Mirabilis from inception November 2003 through December 31, 2005, as Mirabilis' new CFO, among other considerations negotiated for and exchanged at that time. The transaction supporting Claim No. 6 was negotiated at arm's length between Mirabilis' controlling person's and Mr. Glover, unrelated parties at the time of the transaction, and at a time when Mirabilis was not the subject of any known criminal investigation and while Mirabilis was solvent, profitable and highly liquid.

14. The Green Shares as reported in the audited financial statements were in fact issued and Mirabilis did in fact receive the full value it bargained for upon their issuance.

15. Proof of Claim No. 6 is supported by the Stock Certificate for 2,750 Green Shares issued to Paul Glover, the MV Audited Financials and the Mirabilis Shareholder Proxy. The MV Audited Financials and Mirabilis Shareholder Proxy clearly outline the negotiated terms of the guaranteed value as of December 2005 in the form of an unsecured note equal to $1,000 per Green Share at a time when Mirabilis was solvent, profitable and highly liquid. Claim No. 6 is not an equity claim but an unsecured claim for a value guaranteed in December 2005.

16. In the alternative, to the extent the Court determines that the Green Shares were fraudulently represented by Mirabilis as conveying the guaranteed value reported by Mirabilis, Mirabilis should still be held financially responsible for the consideration bargained for and received at that time.

## REQUESTED RELIEF

**WHEREFORE**, Mr. Glover respectfully requests this Court enter an Order overruling the Amended Objection to Claim No. 6, affirming the validity of Claim No. 6 in its entirety, and for such other and further relief as the Court deems just and proper in the circumstances.

## AS TO COUNT III – BREACH OF FIDUCIARY DUTY

17. In response to Count III Breach of Fiduciary Duty, Mr. Glover re-alleges and restates Items 1-5, as fully set forth above.

18. To establish a Breach of Duty, the Adversary Claimant must prove that the Defendant acted negligent, behaved in an unreasonable way given the entrusted standard of care. The Adversary Claimant has not provided any evidence of such a Breach of Duty.

19. Alternatively, in addition to establishing damages, to rely on "res ipsa loquitur" meaning that the act speaks for itself, the Adversary Claimant must prove two things; that the event which caused injury to themselves only happens when negligence occurs, and that the event which caused the injury was under the exclusive control of the Defendant. It is preposterous to conclude that the referenced Amodeo events that caused the "destroyed reputation and operations of Mirabilis" were under the exclusive control of Mr. Glover.

20. In December of 2005 Mr. Glover was recruited by Mr. Bruce Walko, Mirabilis's Board of Directors, the then purported Executive Team of Mirabilis including Messrs. Dan Myers, Bob Pollack, Jim Sadrianna, Frank Hailstones, Richard Berman, Frank Amodeo and others, to be the new Mirabilis CFO. In addition to preparing for an audit of Mirabilis from inception November 2003 through December 31, 2005 (effectively three different audit years), the demands placed upon Mr. Glover included compiling accounting records for over 60 companies, designing and implementing a new computer system for a proposed soon to be acquired large PEO book of business, negotiating the acquisition of Secured Solutions, performing due diligence on Workers Temporary Staffing, Inc., coordinating workmen's compensation insurance coverage for a managed book of PEO business, attempting to coordinate and implement a system of cash and other internal system controls, and performing due diligence on several other potential acquisitions, among other responsibilities. This

required many 80 plus hour weeks, and several 24 hour days where Mr. Glover went home only to shave, shower and change clothes before returning to work as can be verified through testimony. The demands of the position were extensive. Further in May of 2006, strangely coincidental to the time when the Presidion PEO business attempted to be infused into Mirabilis, Mr. Glover's duties were reassigned and he was further removed from any access to information that was essential to the monitoring and/or control of the referenced and alleged "Amodeo events that caused the destroyed reputation and operations of Mirabilis". At that time Mr. Michael Stanley took over as CFO of the Human Resource Services Division and shortly thereafter Mr. Bill Walsh took over as CFO of Mirabilis. The fact is, Mr. Glover was specifically separated from both the access to the information necessary to identify and assess the nature of, and the control over the referenced Amodeo events represented by the Adversary Claimaint to have caused the "destroyed reputation and operations of Mirabilis".

21. The imposed executive hierarchy of Mirabilis during the period of Mr. Glover's Employment included: Mr. Laurie Holtz – Chairman of the Board, and Co-Chair of the Audit Committee. Mr. Frank Hailstones – President and CEO. Mr. Fernando Simo – Chief Operating Officer. Mr. Richard Berman Board of Director and Chief In-House Counsel. Ms. Edith Curry – Board of Director, and Co-Chair of the Audit Committee. Mr. Holtz's on-line profile downloaded on February 3, 2010 reports that Mr. Holtz is "a nationally recognized experienced professional in the specialized practice of forensic accounting. One of the nation's pioneers in the area of investigative accounting" among his other accolades as a CPA and Certified Fraud Examiner. Mr. Holtz was actively involved in Mirabilis' operations. Mr. Hailstones' on-line profile downloaded on February 3, 2010 reports that he has "been recognized internationally as a speaker on topics as fighting fraud, embedding risk management, effective corporate governance and continuous monitoring and auditing… and eighteen years with Price Waterhouse Coopers, 13 of which as a Partner". Mr. Simo's on line

9

profile indicates that he was the "CFO of a major british telecommunications company Cable and Wireless" immediately preceding his joining Mirabilis.  Mr. Berman's on-line profile downloaded on February 3, 2010 reported that Mr. Berman "has been a practicing attorney for more than 30 years. Successfully defended a former President of the United States." And a series of Risk Management and Ethics Committee accolades.  It is inconceivable that these highly credentialed superiors would have permitted Mr. Glover to have exclusive control over any functional area of Mirabilis Ventures, Inc. that could potentially cause irreparable damage, and in fact they did not permit Mr. Glover that type of control.  The fact is that Mr. Holtz, Mr. Berman, Mr. Simo, Ms. Curry and Mr. Hailstones were all in a superior position to assess, monitor and control the referenced Amodeo events represented by the Adversary Claimant to have caused the "destroyed reputation and operations of Mirabilis".

22. Mr. Glover was not permitted access to or control over the actions of Mr. Amodeo which led to the Federal Grand Jury investigation.

## REQUESTED RELIEF

**WHEREFORE**, Mr. Glover respectfully requests this Court enter an Order dismissing Count III – Breach of Fiduciary Duty, and for such other and further relief as the Court deems just and proper in the circumstances.

## AS TO COUNT IV – FRAUDULENT TRANSFER UNDER 11 U.S.C. Sections 544, 548 and 550
## (PLEAD IN THE ALTERNATIVE)

23. In response to Count IV – Fraudulent Transfer Under 11 U.S.C. Sections 544, 548 and 550 (Plead in the Alternative), Mr. Glover re-alleges and restates Items 1-5, as fully set forth above.

24. The Adversary Claimant alleges a fraudulent transfer based upon allegations that "Mirabilis did not receive reasonably equivalent value from Glover in exchange for the Transfer" and that "Mirabilis was insolvent on March 6, 2007, the date the Transfer was made".

25. The negotiated value for the services to be performed under the Employment Agreement with Mirabilis were rendered for the prescribed period generating the accrued and unpaid salary $7,500, the guaranteed minimum unpaid bonus $360,000, the unpaid guaranteed severance benefit upon separation of service $90,000, and the unpaid life insurance benefits of $879.20 establishing Claim No. 5 in the aggregate amount of $458,379.20. As such, Mirabilis did receive the value for the negotiated Employment Agreement.

26. The Adversary Complaint recaps the Glover Proofs of Claims referencing that Claim no. 6 is supported by a $2,854,949.39 unsecured promissory note, but fails to represent that the transaction giving rise to the obligation occurred on December 31, 2005. The obligation was attached to the issuance of 2,750 of Green Shares in Mirabilis in connection with the process of recruiting Mr. Glover to leave gainful employment with Pan Am International Flight Academy, Inc. (hereafter "Pan Am") , forfeiting his existing standing with respect to Pan Am's equity and bonus compensation structure, in exchange to take on an enormous challenge of organizing the accounting records of Mirabilis Ventures, Inc.'s consolidated group of over 60 entities in preparation for an audit of Mirabilis from inception November 2003 through December 31, 2005, as Mirabilis' new CFO, among other considerations

11

negotiated for at that time. The representations made at that time as reflected in the Mirabilis Ventures, Inc. Consolidated Audited Financial Statements from Inception through December 31, 2005 (hereafter "MV Audited Financials"), and supported by the Mirabilis Shareholder Proxy, was that the Green Shares were supported by an unsecured promise to pay $1,000 per Green Share, payable in 60 even monthly installments together with accrued interest beginning upon separation of service for any reason (see Footnote 19 to the MV Audited Financials and the Mirabilis Shareholder Proxy). The transaction entered into giving rise to Claim No. 6 was negotiated at arm's length between Mirabilis and Mr. Glover, unrelated parties at the time of the transaction, was without the intent to hinder, delay or defraud any other creditor of the Debtor, and was negotiated for fair value delivered as recognized by the parties on or before December 31, 2005.

27. Claim No. 6 is based upon the value provided on December 31, 2005 in connection with Mirabilis Ventures, Inc. recruitment of Mr. Glover to accept a position as CFO, Executive Vice President and Treasurer of Mirabilis. At that time Mirabilis was not subject to any criminal investigation, was solvent, profitable and highly liquid. All of the aforementioned facts are supported by the MV Audited Financials issued for the period ending December 31, 2005. The consideration Mr. Glover was to receive was established at that time to be no less than $1,000 per Green Share payable in 60 even monthly installments together with accrued interest beginning upon separation of service for any reason (see Footnote 19 to the MV Audited Financials and the Mirabilis Shareholder Proxy). Mirabilis bargained for and in fact received the consideration it was compensating Mr. Glover for with the Green Shares at that time in the form of Mr. Glover leaving gainful employment with Pan Am International Flight Academy, Inc. (hereafter "Pan Am") , forfeiting his existing standing with respect to Pan Am's equity and bonus compensation structure, in exchange to take on an enormous challenge of organizing the accounting records of Mirabilis Ventures, Inc.'s consolidated

group of over 60 entities in preparation for an audit of Mirabilis from inception November 2003 through December 31, 2005, as Mirabilis' new CFO, among other considerations negotiated for at that time. The transactions entered into giving rise to Claims 5 and 6 were negotiated at arm's length between Mirabilis and Mr. Glover, unrelated parties at the time of the transaction, was without the intent to hinder, delay or defraud any other creditor of the Debtor, and was negotiated for fair value delivered as recognized by the parties on or before December 31, 2005.

28. The Green Shares as reported in the audited financial statements were in fact issued and Mirabilis did in fact receive the full value it bargained for upon their issuance.

29. Proof of Claim No. 6 is supported by the Stock Certificate for 2,750 Green Shares issued to Paul Glover, the MV Audited Financials, and the Mirabilis Shareholder Proxy. The MV Audited Financials and the Mirabilis Shareholder Proxy clearly outline the terms of the guaranteed value as of December 2005 in the form of an unsecured note equal to $1,000 per Green Share at a time when Mirabilis was solvent, profitable and highly liquid. Claim No. 6 is not an equity claim but an unsecured claim for a value guaranteed in December 2005 at a time when Mirabilis was solvent, profitable and highly liquid.

30. In the alternative, to the extent the Court determines that the Green Shares were fraudulently represented by Mirabilis as conveying the value reported in the MV Audited Financials, Mirabilis should still be held financially responsible for the consideration bargained for at that time.

31. In the alternative, with respect to Claim No. 6, to the extent the Court deems that the guaranteed unsecured claim equal to an aggregate of $2,750,000 was issued, as reported in the MV Audited Financials for the period ended December 31, 2005 (i.e. the date of Transfer was December 31, 2005), then pursuant to Florida Statute Section 726.110: A cause of action with respect to a fraudulent transfer or obligation is extinguished unless action is brought

within four years after the transfer was made or the obligation incurred. As such, the action should be dismissed because the cause of action was filed later than December 2009. The statute of limitations has expired.

32. In the alternative, should the Court determine that there has been no Transfer to date of the monies due under either of Claim No. 5 or Claim No. 6 that would subject any other unsecured creditor to a less than equal pro-rata recoverable basis to that of Mr. Glover's, then clearly there could be no fraudulent transfer.

## REQUESTED RELIEF

WHEREFORE, Mr. Glover respectfully requests this Court enter an Order dismissing Count IV – Fraudulent Transfer Under 11 U.S.C. Sections 544, 548 and 550 (Plead in the Alternative), and for such other and further relief as the Court deems just and proper in the circumstances.

## AS TO COUNT V – FRAUDULENT TRANSFER UNDER 11 U.S.C. SECTIONS 544 AND 550, AND FLORIDA STATUTES SECTION 726.105(1)(A) AND (B), 726.106(1) AND 726.108 (PLEAD IN THE ALTERNATIVE)

33. In response to Count V – Fraudulent Transfer Under 11 U.S.C. Sections 544, and 550 and Florida Statutes Section 726.105(1)(A) and (B), 726.106(1) and 726.108 (Plead in the Alternative), Mr. Glover re-alleges and restates Items 1-5, as fully set forth above.

34. The Adversary Claimant alleges a fraudulent transfer based upon allegations that "Mirabilis did not receive reasonably equivalent value from Glover in exchange for the transfer, and that Mirabilis was insolvent on the date the transfer was made or became insolvent as a result of the transfer".

35. Mr. Glover re-alleges and restates Items 25-30, as fully set forth above.

36. In the alternative, with respect to Claim No. 6, to the extent the Court deems that the guaranteed unsecured claim equal to an aggregate of $2,750,000 was issued, as reported in the MV Audited Financials for the period ended December 31, 2005 (i.e. the date of Transfer was December 2005), then pursuant to Florida Statute Section 726.110: A cause of action with respect to a fraudulent transfer or obligation is extinguished unless action is brought within four years after the transfer was made or the obligation incurred. As such, the action should be dismissed because the cause of action was filed later than December 2009. The statute of limitations has expired.

37. In the alternative, should the Court determine that there has been no Transfer to date of the monies due under either of Claim No. 5 or Claim No. 6 that would subject any other unsecured creditor to a less than equal pro-rata recoverable basis to that of Mr. Glover's, then clearly there could be no fraudulent transfer.

38.

### REQUESTED RELIEF

**WHEREFORE**, Mr. Glover respectfully requests this Court enter an Order dismissing Count IV – Fraudulent Transfer Under 11 U.S.C. Sections 544, and 550 and Florida Statutes Section 726.105(1)(A) and (B), 726.106(1) and 726.108 (Plead in the Alternative), and for such other and further relief as the Court deems just and proper in the circumstances.

**RESPECTFULLY SUBMITTED** this 9t[h] day of February, 2010.

Paul S. Glover, pro se
1312 Winter Springs Boulevard
Winter Springs, Florida 32708
Paul_Glover3@yahoo.com
Telephone: 407-920-0668

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this **ANSWER AND MOTION IN RESPONSE TO MIRABILIS VENTURES, INC.'S ADVERSARY COMPLAINT AGAINST PAUL GLOVER** has been furnished by U.S. First Class, postage prepaid mail to the counsel for the Debtors, Mr. R. Scott Shuker, Esq., Latham, Shuker, Eden & Beaudine, LLP 390 North Orange Avenue, Suite 600, Orlando, Florida 32802-3353, this 9th day of February, 2010.

_____
Paul S. Glover, pro se
1312 Winter Springs Boulevard
Winter Springs, Florida 32708
Paul_Glover3@yahoo.com
Telephone: 407-920-0668