EXHIBIT "B"

It is proposed to amend the Articles of Incorporation in relevant parts, as follows:

Mirabilis Ventures, Inc. (the "Company") has been authorized to issue seventy-five thousand (75,000) shares of Class A capital common stock ("Black Stock" or "Black Shares") with no par value, six million (6,000,000) shares of Class B preferred stock ("Green Stock" or "Green Shares") with no par value, one million (1,000,000) shares of Class P preferred stock ("Gold Stock" or "Gold Shares") with no par value, four hundred thousand (400,000) shares of Class T preferred stock ("Platinum Stock" or "Platinum Shares") with no par value, and twelve million (12,000,000) shares of Class Z preferred stock ("Blue Stock" or "Special Preferred Stock" or "Blue Shares") with no par value; (collectively, the "Shares")

### Class A Common Stock: Black Stock

1.01 <u>Black Stock Defined</u>. The Company shall issue, to each Recipient of Class A Common Stock, shares of Black Stock as a means of evidencing ownership interest and participation in the business of the Company. As used in this Agreement, the term "Recipient" shall mean any individual who purchases or receives any class or classes of Company Stock.

1.02 <u>Non Registration and Illiquidity of Black Stock.</u> Black Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Black Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Black Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Black Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Black Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

1.03 <u>Waiver of Transfer Rights of Black Stock</u>. Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Black Shares.

1.04 <u>Additional Distributions</u>. Shareholders of Black Stock shall be entitled to share, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

1.05 <u>Limited Alienability of Black Stock</u>. Each party understands, upon accepting

the Black Shares, that such shares are non-alienable other than to the AQMI Trust which shall become funded immediately upon the incapacity, death, or disability of a Shareholder of Black Stock, as those terms are defined in said AQMI Trust; provided, however, that if seventy-five (75%) percent of the Shareholder of Platinum Shares (each such Shareholder hereinafter referred to individually as "Tenured Shareholder" or jointly as "Tenured Shareholder") and fifty (50%) percent of the Shareholders of Gold Shares (each such Shareholder hereinafter referred to individually as "Preferred Shareholder" or jointly as "Preferred Shareholder") approve, then said Black Shares may be transferred to any such identified and approved party. Each party agrees, as a condition to any transfer of stock permitted by this Agreement, other than to the AQMI Trust, to obtain an opinion of legal counsel, in form and substance reasonably satisfactory to the Company and its legal counsel, that such transfer will not result in a violation of any securities law or regulation stock will bear the legend set forth in Section 6, below, as notice to any prospective transferee that such common stock is unregistered.

1.06  Veto Rights of Black Stock. Except as provided herein, any Shareholder of at least twenty-five thousand (25,000) Black Shares shall have the ability to veto of any decision made by the other classes of Shareholders, within twenty (20) days of notice of said decision ("Veto Power"). Notice may be satisfied by posting a copy of said modification to the Company webpage in a clearly designated location where Shareholders can access the information. Notwithstanding the foregoing, the Veto Power shall not extend to:

        A.    Veto the issuance of Gold Shares;

        B.    Veto the issuance of Platinum Shares; or

        C.    Veto the authorization of an additional distribution.

1.07  Amendments to Bylaws or Articles of Incorporation. Other than to amend the number of shares authorized for distribution, Black Shares may not amend the bylaws or articles of incorporation of the Company without the consent of 1/3 of the Preferred Shareholder and a majority of the Tenured Shareholder; provided however, that Black Shares may cause an amendment to the bylaws or articles without consent if there is sufficient funds to cause the redemption of all Green Shares, Gold Shares, and Platinum Shares at seventy-five (75%) percent of One Thousand Dollars ($1,000) per share. In the event that the Black Shares cause the amendment to the bylaws or articles without consent, notice shall be given to the Shareholder of said change within seventy-two (72) hours. Notice may be satisfied by posting a copy of said modification to the Company webpage in a clearly designated location where Shareholder can access the information. For a period of thirty (30) days thereafter, any Shareholder of Green Shares, Gold Shares or Platinum Shares may present to the Company their shares for redemption in accordance with the terms of this Agreement. After said thirty (30) day period has lapsed, no further requests for redemption resulting from the modification shall be entertained by the Company and each such remaining Shareholder shall be deemed to have waived any objection to said modification, and shall be further deemed to have given their tacit approval to said

modification.

    1.08    <u>Redemption of Black Stock Upon Bankruptcy or Marital Dissolution.</u> Upon the filing by any Shareholder of Black Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Black Stock, the Company shall automatically transfer to the AQMI Trust any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such transfer being made for the sum of One Hundred Thousand Dollars ($100,000). Said payment by the AQMI Trust shall be made in the form of a promissory note for the full redemption price, plus simple interest accruing at a rate of three (3%) percent per annum, payable by the Company in a lump sum payment of all principal and accrued interest at the end of one year; provided, however, that there shall be no prepayment penalty under the terms of the promissory note. Nothing in this paragraph shall be deemed to give any ownership interest in the Black Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Black Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Black Shares.

    1.09    <u>Redemption of Black Shares Upon Death of Shareholder</u>. Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Black Shares at a price computed pursuant to a separate Black Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Black Shares. Said payment shall be distributed to the decedent's estate and or its beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy. Said redemption shall occur according to the following payout schedule:

    A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

    B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

    C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

    D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding

redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class B Standard Preferred Stock: Green Stock

2.01  **Green Stock Defined.** The Company shall issue, to each Recipient of Class B Standard Preferred Stock, shares of Green Stock as a means of evidencing ownership interest and participation in the business of the Company.

2.02  **Non Registration and Illiquidity of Green Stock.** Green Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Green Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Green Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Green Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Green Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

2.03  **Waiver of Transfer Rights of Green Stock.** Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Green Shares, other than as specifically provided for in this Agreement.

2.04  **Non-Alienability of Green Stock.** Each party understands, upon accepting the Green Shares that such shares are non-alienable; provided, however, that upon acceptance as a Preferred Shareholder, any such Green Stock held by said Preferred Shareholder shall be assumed by the Company as treasury shares and shall be exchanged in accordance with the terms of Section 3.04 of this Agreement.

2.05  **Voting Rights of Green Stock.** Green Stock shall have limited voting rights. Holders of Green Stock shall have the right to vote their shares only on the approval of an additional distribution or any such vote which, by state law, requires the approval of each class of shares. No other voting rights shall be conferred on to the Green Shares.

2.06  **Additional Distributions.** Holders of Green Stock shall be entitled to share, in conjunction with all Holders of Gold Stock, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

2.07  **Redemption Upon Departure of the Company.** Upon the termination,

retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Green Shares, then said Green Shares shall be redeemed by the Company at a price of $1,000.00, per Green Share with such payment being made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Green Shares within thirty (30) days of the occurrence of a Triggering Event.

2.08  *Redemption of Green Stock Upon Bankruptcy or Marital Dissolution.* Upon the filing by any Shareholder of Green Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Green Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price of $1,000.00, per Green Share. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum. Nothing in this paragraph shall be deemed to give any ownership interest in the Green Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

2.09  *Redemption of Green Shares Upon Death of Shareholder.* Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Green Shares at a price of $1,000.00, per Green Share and distribute them to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy. Said redemption shall occur according to the following payout schedule:

    A.  Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

    B.  Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

    C.  Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D. Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class P Preferred-Status Preferred Stock: Gold Stock

3.01 Gold Stock Defined. The Company shall issue, to each Recipient of Class P Preferred-Status Preferred Stock, shares of Gold Stock as a means of evidencing ownership interest and participation in the business of the Company.

3.02 **Eligibility for Gold Stock.** In order to be eligible for Gold Stock, an individual must hold at least three thousand (3,000) Green Shares. Thereafter, at the next convened regular Gold Stock Committee meeting or special Gold Stock Committee meeting convened for the purpose of considering the same, any such eligible Shareholder of Green Shares shall be considered for Gold Stock. Said regular meeting shall occur not less than once in every twelve month period. The determination of the Gold Stock Committee shall be final, and approval for Gold Stock may be withheld in the Gold Stock Committee's sole and unfettered discretion. Any individual not granted approval for Gold Stock shall be reconsidered during subsequent Gold Stock Committee meetings which consider the extension of invitations for the issuance of Gold Stock.

3.03 Gold Stock Committee. As used in this Agreement, the "Gold Stock Committee" refers to any individual who holds Gold Stock. Decisions of the Gold Stock Committee shall be based on majority vote. Gold Stock Committee members may appear in person, via phone, or other communication method to actively participate in the meeting. Members holding Gold Stock as of the date of this Agreement shall not require Gold Stock Committee approval.

3.04 Issuance of Gold Stock. Each individual who has been authorized to receive Gold Stock shall surrender three thousand (3,000) shares of their Green Stock to the Company, which shall be assumed as treasury shares. In exchange for the surrendered Green Stock, the Company shall issue on a 1:1 basis Gold Stock to the individual. Nothing in this Section 3.04 shall preclude a Gold Shareholder from obtaining additional shares of Green Stock, however, no individual shall, in any case, own greater than 5,000 shares of Gold Stock.

3.05 Non Registration and Illiquidity of Gold Stock. Gold Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Gold Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Gold Shares to

be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Gold Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Gold Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

3.06 <u>Waiver of Transfer Rights of Gold Stock</u>. Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Gold Shares, other than as specifically provided for in this Agreement.

3.07 <u>Non-Alienability of Gold Stock</u>. Each party understands, upon accepting the Gold Shares that such shares are non-alienable; provided, however, that upon acceptance as a Tenured Shareholder, any such Gold Stock held by said Tenured Shareholder, shall be assumed by the Company as treasury shares and shall be exchanged in accordance with the terms of Section 4.04 of this Agreement.

3.08 <u>Voting Rights of Gold Stock</u>. Gold Stock shall vote on the following matters: all matters put to a vote of the Shareholders pursuant to statute or the Company bylaws, subscription invitations to Shareholders of Green Shares for their exchange into Gold Stock, subject to the minimum requirements set forth in this Agreement, and for the authorization of additional distributions. No other voting rights shall be conferred on to the Gold Shares.

3.09 <u>Additional Distributions</u>. Holders of Gold Stock shall be entitled to share, in conjunction with all Holders of Green Stock, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

3.10 <u>Redemption Upon Departure of the Company</u>. Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Gold Shares, then said Gold Shares shall be redeemed by the Company at the amount computed pursuant to a separate Gold Shares acquisition agreement previously entered by and between a Shareholder of Gold Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Gold Shares. Any payments made under this section shall be made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Gold Shares within thirty (30) days of the occurrence of a Triggering Event.

3.11 <u>Redemption of Gold Stock Upon Bankruptcy or Marital Dissolution.</u> Upon the filing by any Shareholder of Gold Stock for Marital Dissolution (whether as a Petitioner

or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Gold Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at the amount computed pursuant to a separate Gold Shares acquisition agreement previously entered by and between a Shareholder of Gold Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Gold Shares. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum. Nothing in this paragraph shall be deemed to give any ownership interest in the Gold Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

      3.12    <u>Redemption of Gold Shares Upon Death of Shareholder</u>. Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Gold Shares at the amount computed pursuant to a separate Gold Shares acquisition agreement previously entered by and between a Shareholder of Gold Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Gold Shares and distribute them to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy. Said redemption shall occur according to the following payout schedule:

      A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

      B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

      C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

      D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class T Tenured-Status Preferred Stock: Platinum Stock

4.01   **Platinum Stock Defined**. The Company shall issue, to each Recipient of Class T Preferred-Status Preferred Stock, shares of Platinum Stock as a means of evidencing ownership interest and participation in the business of the Company.

4.02   **Eligibility for Platinum Stock**. In order to be eligible for Platinum Stock, an individual must hold five thousand (5,000) Gold Shares. Thereafter, at the next convened regular Platinum Stock Committee meeting or special Platinum Stock Committee meeting convened for the purpose of considering the same, any such eligible Shareholder of Gold Shares shall be considered for Platinum Stock. Said regular meeting shall occur not less than once in every twelve month period. The determination of the Platinum Stock Committee shall be final, and approval for Platinum Stock may be withheld in the Platinum Stock Committee's sole and unfettered discretion. Any individual not granted approval for Platinum Stock shall be reconsidered during subsequent Platinum Stock Committee meetings which consider the extension of invitations for the issuance of Platinum Stock.

4.03   **Platinum Stock Committee**. As used in this Agreement, the "Platinum Stock Committee" refers to any individual who holds Platinum Stock. Decisions of the Platinum Stock Committee shall require two-thirds (2/3) of the Committee's affirmative vote. Platinum Stock Committee members may appear in person, via phone, or other communication method to actively participate in the meeting. Until such time as there are six (6) Shareholders of Platinum Shares, decisions reserved for the Platinum Stock Committee shall be made by a majority vote of the Shareholders of Black Stock.

4.04   **Issuance of Platinum Stock**. Each individual who has been authorized to receive Platinum Stock shall surrender all five thousand (5,000) shares of their Gold Stock to the Company, which shall be assumed as treasury shares. In exchange for the surrendered Gold Stock, the Company shall issue on a 1:1 basis Platinum Stock to the individual. Nothing in this Section 4.04 shall preclude a Platinum Shareholder from obtaining additional shares of Green Stock, however, no individual shall, in any case, own greater than 5,000 shares of Platinum Stock.

4.05   **Non Registration and Illiquidity of Platinum Stock**. Platinum Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Platinum Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Platinum Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Platinum Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Platinum Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

4.06    **Waiver of Transfer Rights of Platinum Stock.**  Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Platinum Shares.

4.07    **Non-Alienability of Platinum Stock.**  Each party understands, upon accepting the Platinum Shares that such shares are non-alienable.

4.08    **Voting Rights of Platinum Stock.**  Platinum Stock shall vote on the following matters: subscription invitations to Shareholders of Gold Shares for their exchange into Platinum Stock, subject to the minimum requirements set forth in this Agreement, for the authorization of additional distributions, and any such vote which, by state law, requires the approval of each class of shares. No other voting rights shall be conferred on to the Platinum Shares.

4.09    **Additional Distributions.**  Holders of Platinum Stock shall be entitled to share, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

4.10    **Redemption Upon Departure of the Company.**  Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Platinum Shares, then said Platinum Shares shall be redeemed by the Company at the amount computed pursuant to a separate Platinum Shares acquisition agreement previously entered by and between a Shareholder of Platinum Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Platinum Shares. Any payments made under this section shall be made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Platinum Shares within thirty (30) days of the occurrence of a Triggering Event.

4.11    **Redemption of Platinum Stock Upon Bankruptcy or Marital Dissolution.**  Upon the filing by any Shareholder of Platinum Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Platinum Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at the amount computed pursuant to a separate Platinum Shares acquisition agreement previously entered by and between a Shareholder of Platinum Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Platinum Shares. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which

shall accrue interest at a rate of three (3%) percent per annum. Nothing in this paragraph shall be deemed to give any ownership interest in the Platinum Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

4.12   Redemption of Platinum Shares Upon Death of Shareholder. Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Platinum Shares at the amount computed pursuant to a separate Platinum Shares acquisition agreement previously entered by and between a Shareholder of Platinum Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Platinum Shares and distribute them to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy. Said redemption shall occur according to the following payout schedule:

   A.   Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

   B.   Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

   C.   Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

   D.   Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class Z Special Preferred Stock: Blue Stock

5.01   Blue Stock Defined. The Company shall issue, to each Recipient of Class Z Special Preferred Stock, shares of Blue Stock as a means of evidencing ownership interest and participation in the business of the Company.

5.02   Issuance of Blue Stock. Blue Stock shall be special stock issued from time to time by the Company, at the direction of the Board of Directors.

5.03  **Non Registration and Illiquidity of Blue Stock.** Blue Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Blue Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Blue Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Blue Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Blue Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

5.04  **Waiver of Transfer Rights of Blue Stock.** Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Blue Shares, other than as specifically provided for in this Agreement.

5.05  **Non-Alienability of Blue Stock.** Each party understands, upon accepting the Blue Shares that such shares are non-alienable.

5.06  **Voting Rights of Blue Stock.** Blue Stock shall have no voting rights other any such vote which, by state law, requires the approval of each class of shares.

5.07  **Distributions.** Holders of Blue Stock shall not be entitled to any distributions whatsoever.

5.08  **Redemption Upon Departure of the Company.** Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Blue Shares, then said Blue Shares shall be redeemed by the Company at the amount computed pursuant to a separate Blue Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Blue Shares. However, under no circumstances the redemption amount shall exceed $1,000.00 per Blue Share. Any payments made under this section shall be made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Blue Shares within thirty (30) days of the occurrence of a Triggering Event.

5.09  **Redemption of Blue Stock Upon Bankruptcy or Marital Dissolution.** Upon the filing by any Shareholder of Blue Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment,

seizure by legal process, or other involuntary transfer of any Blue Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price computed pursuant to a separate Blue Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Blue Shares. However, under no circumstances the redemption amount shall exceed $1,000.00 per Blue Share. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum. Nothing in this paragraph shall be deemed to give any ownership interest in the Blue Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

     5.10    Redemption of Blue Shares Upon Death of Shareholder. Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Blue Shares at a price computed pursuant to a separate Blue Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Blue Shares. However, under no circumstances the redemption amount shall exceed $1,000.00 per Blue Share. Said payment shall be distributed to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy. Said redemption shall occur according to the following payout schedule:

     A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

     B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

     C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

     D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.